[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married on July 3, 1981, in Stratford, Connecticut. This is the only marriage for both parties. They have resided continuously in this state for at least twelve months before the date of filing the complaint; therefore, the court has jurisdiction. There is one minor child issue of the marriage, Sarah Marie born August 1, 1984.
1. Facts of the Case
The plaintiff husband, James Dunlap, is a fifty-one year old entrepreneur. He currently owns a company through which he distributes bakery products. The plaintiff is a high school graduate. He received some additional training in basic accounting. The defendant wife, Diane Mullins Dunlap, is a fifty-five year old individual who spent a majority of her marriage as a homemaker. While married, the defendant received an associate's degree in recreational and leisure studies. She has worked during the latter portion of the marriage periodically.
Both parties are in relatively good health. There are two children born to this marriage. The youngest, Sarah Marie, celebrates her eighteenth birthday on August 1, 2002. The parties have agreed to joint legal and physical custody of their children.
Although the parties have been married for twenty-one years, they have not been partners for a significant period of time. There were two primary sources of friction: finances and child care philosophies. As a result of basic differences in their approach to these concerns, the CT Page 8475 parties have drifted apart.
Turning to the area of family dynamics first, a major source of disagreement has been their daughters. The two girls have a close relationship with their father. Their relationship with their mother is strained. Insofar as the plaintiff was his daughters' softball coach, attending all practices and games, it is natural that he and his children closely bonded. The defendant had a more limited interaction with the girls during their extracurricular activities. Furthermore, in the Dunlap household the defendant was the primary disciplinarian. The plaintiff was more indulgent.
Reviewing the issue of family finances, at the time of the dissolution hearing and for the preceding decade, the plaintiff was an equal partner in J A Bake Goods of West Haven, Connecticut, a bakery product distributor. That company supplied baked goods for restaurants, groceries and delicatessens.[1]
Contrary to the defendant's suggestion otherwise, J A Bake Goods is not a thriving venture. The plaintiff's business encompassed twenty-two separate delivery routes, all in Connecticut. It had few tangible assets. Even the storage facility was rented. There are no written contracts with either suppliers or customers.
As is true in many areas of the economy, since September of 2001, the bakery distribution business has weakened. In particular, catering and business functions have decreased. At the time of the dissolution hearing the plaintiff's business was struggling to meet expenses. J A Bake Goods did acquire another distributor, Connecticut Cakes. However, that acquisition did not result in any increase in the company assets. To the contrary, profits declined.[2]
Any value of J A Bake Goods is derived from the fact that the plaintiff and his partner each work over fifty hours per week to meet their customers' demands. The sole source of the plaintiff's income is his basic compensation from J A Bake Goods. The company has never distributed any profit to principals or shareholders. Indeed, there has never been any profit to distribute.[3]
The current economic downturn is not the first experienced by the plaintiff and his partner. That business was facing difficulties in 1995. The problem was so severe that the plaintiff urged the defendant to find employment and supplement the family income. She refused.
Throughout most of this marriage, the defendant has been a homemaker.[4] She maintained and decorated the marital home. CT Page 8476 In addition to keeping a lovely home, the defendant attempted to prepare nourishing meals for her family[5] at least until the girls became teenagers. The defendant had a warm, loving relationship with her children.
Although the plaintiff wanted his wife to work, especially as the children aged, the defendant preferred to remain at home, tending to the needs of her family and pursing personal interests. During the marriage, using marital assets, the defendant attended Norwalk Community College. In 1996, she secured an associate's degree in recreational and leisure studies. Her preferred area of concentration was geriatric activities.
From 1996 to 1998, the defendant worked at the Baldwin Center in Stratford, Connecticut, a position well suited for her specific area of expertise. She voluntarily left that situation in December, 1998, the same month that her mother, Louise Bilyard moved into the marital home. The defendant also wanted to spend more time with her teenage daughters.
During the next year, the defendant remained at home. In 1999, she became a doula, a trained assistant for families with newborn children. At the end of her employment, the defendant was earning approximately $15 per hour. She voluntarily left that position in August of 2000, the month in which the plaintiff filed the present action.
Since the initiation of the divorce proceedings, the defendant has refused to seek employment. She offers a series of justifications for her actions including the need to care for her daughters, the demands of her elderly mother and the fact she has recently changed households.[6]
Additionally, the defendant claims that she simply is too distraught to seek employment. There is no medical evidence that her emotional condition prevents her gainful employment.
The parties did accumulate some assets. The plaintiff purchased the marital home three years before this marriage. During the course of the marriage, the property has increased in value. Some of that increase was due to normal market fluctuation. Another portion was the result of work done by both the plaintiff and the defendant. The parties refinanced their mortgage to pay for some of those improvements. During the present hearing, the parties sold the marital residence. The proceeds have remained in escrow.[7]
The parties resided in the marital home with their daughters and the defendant's mother. The latter had lived in the home for four years at the time of the dissolution action. Except for some minor contributions during one remodeling, Mrs. Bilyard made no contributions toward the maintenance of the Dunlap home. She did not pay rent or utilities.[8]
CT Page 8477
During the dissolution proceedings, without consulting the plaintiff, the defendant removed the bulk of the furniture from the marital home. In addition to most of the household furnishings, the defendant took all personal memorabilia and items inherited by the defendant. In particular, the defendant removed a silver tea set that the plaintiff received from his mother, explaining that the antique family heirloom suited her personality and tastes.
During the latter years of this marriage both parties received money from their respective families. In 1998, when the plaintiff's mother died, the plaintiff received $90,000 from the sale of her home. The money was placed in investment accounts. Unfortunately, much of the money was lost after a series of stock market losses.[9] Another, much smaller, portion of the funds was used to pay for a portion of their oldest daughter's education. The defendant contributed $26,000 to the investment account, money she took from a joint account over which she exercised control.[10]
Although the defendant has theorized that the plaintiff had undisclosed assets, she has failed to provide any evidence to suppose this contention.[11] What is clear is that the plaintiff's few investments were unsuccessful. For example, the plaintiff had purchased several multi-family homes in Bridgeport. At the time of the trial, there was no equity in any of these homes. To the contrary, they were burdened with tax liens and cumbersome mortgages. These properties were a liability, not an asset.
Similarly, the plaintiff's sole income producing enterprise, J A Bake Goods, was not successful. At the time of this trial, that business was slightly profitable. For several consecutive years, the company operated at a loss. Any profits were due to the partners' labor. The plaintiff worked long hours. He retired early but rose in the middle of the night.
Due to the plaintiff's work schedule, the family could not take many extended family vacations. As the defendant acknowledged, the plaintiff was an excellent provider for his family. Furthermore, he did not complain about his long hours.
In 1996 the plaintiff did ask the defendant to assist him with the family finances by securing employment outside the home. She initially refused, firm in her belief that any problems with J A Bake Goods were the plaintiff's concerns solely. Ironically, when the defendant did finally secure employment, she kept all the money so earned. She did not consider her earnings part of the household income.[12] She did not consider money, or the lack thereof, an important factor in their CT Page 8478 marriage. However, she acknowledged that the plaintiff worked long hours during the latter years of their marriage. She presumed that the longer hours resulted in greater profits. Evidence at trial revealed the opposite.[13]
Since the initiation of the dissolution proceedings, the defendant's efforts to secure employment remain minimal. She obviously preferred to remain a homemaker.[14] Unfortunately, as the children grew that role diminished.
There are no simple reasons for the deterioration of this marriage. The parties had substantially different beliefs concerning financial management and child development. Although initially compatible, once their children had grown these two individuals had little in common. The defendant observes, quite correctly, that the plaintiff did not value all of her services as a wife and mother. On the other hand, she did not value his services as a husband and father. Both parties share responsibility for this marital breakdown.
II. Motion for Contempt
On March 26, 2002, the defendant filed a Motion for Contempt —Violation of Automatic Orders wherein she alleged that the plaintiff had improperly transferred $5,646.00 from a joint investment account. The plaintiff sought an adjudication of contempt, punishment and counsel fees.
The parties to this action had a joint investment account that has been referred to previously in this memorandum. The couple's eldest child, Stacey, attends college in New London. The plaintiff withdrew $2,873 in both August, 2001 and January, 2002. That money was used to pay for part of Stacey's educational expenses. The use of this money was not discussed in advance with the defendant.
Connecticut procedure authorizes motions for contempt, one of the few vehicles available to enforce compliance with court orders. The burden of establishing a prima facie showing of contempt, in this case the willful disobedience of a court order, falls upon the defendant.
In the present action, the defendant has established the existence of an order, the automatic orders of the court. What she failed to establish is that the plaintiff's action, paying for their child's college tuition, violated those orders. Recognizing the broad equitable powers of this court, ". . . a finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as CT Page 8479 in ordinary cases." (Citations omitted; internal quotation marks omitted.) Sgarellino v. Hightower, 13 Conn. App. 591, 595-96, 538 A.2d 1065
(1988).
As is often true in these situations, the court is faced with a question of credibility. For the plaintiff to be found in contempt, the defendant must show that there has been noncompliance and such noncompliance was willful. See Meehan v. Meehan, 40 Conn. App. 107,669 A.2d 616 (1996); Marcil v. Marcil, 4 Conn. App. 403, 405 (1985). Where there are good faith efforts to comply with court orders, contempt is precluded. The motion for contempt is, therefore, denied.[15]
III. Orders
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes section46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981).[16]
The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
 1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
 2. The parties shall have joint legal custody of the minor child issue of the marriage, Sarah Marie Dunlap. The parents shall share physical custody of this child during her minority.
 3. The plaintiff shall provide to or for the benefit of the minor child such medical and dental insurance as may be available through his employment, for as long as said child is a minor.
 4. The plaintiff shall provide to and for the benefit of the defendant such medical and dental insurance as may be available through his employment for a period of two years.
 5. The plaintiff shall pay to the defendant periodic alimony in the amount of one thousand ($1,000) dollars per month for sixty (60) months beginning August 1, 2002 and concluding July 1, 2007. The term of this award is not modifiable.
The alimony award shall terminate upon the happening of any of the following events, whichever CT Page 8480 first occurs: (a) the plaintiff's death; (b) the plaintiff's remarriage; (c) in the discretion of the court pursuant to Connecticut General Statutes section 46b-86 (b), or the plaintiff's cohabitation.
 6. For as long as the plaintiff shall have an alimony or support obligation, he shall cause to have in force and effect a life insurance policy on his own life in the sum of at least $30,000, naming the defendant as the beneficiary thereof. The plaintiff shall provide to the defendant satisfactory evidence thereof within thirty (30) days and at such other times as may be reasonably requested by the defendant.
 7. For tax purposes the plaintiff may claim Sarah as a dependent. The defendant may claim Stacey as a dependent.
 8. The parties have sold the marital property located at 116 Sixth Street in Stratford, Connecticut.
 a. After payment of the mortgage, broker's fee, attorney's fees and any other usual and customary closing expenses, the net proceeds shall first be utilized to and for the sewer repair bill in the amount of $3,600.
 b. After the aforementioned debt has been satisfied, any remaining proceeds shall be divided evenly between the litigants.
 9. Each party shall be responsible for any taxable gain in said proportion.
 10. The defendant is awarded all of the furniture and furnishings in the marital home, with the exception of the antique silver tea set that is awarded to the plaintiff.
11. The plaintiff is awarded the Dodge Caravan automobile and shall be responsible for any outstanding loan and shall indemnify and hold harmless the defendant from any claim or demand thereon. The defendant is awarded the Honda CT Page 8481 automobile and shall be responsible for any outstanding loan and shall indemnify and hold harmless the plaintiff from any claim or demand thereon.
 12. The parties shall divide equally the following: the defendant's IRA account; the joint Merrill Lynch Account; the First Providence, a.k.a. Continental, stock account. The parties shall prepare, and be equally responsible for, presenting this court with a plan to effectuate that transfer.
 13. The defendant shall retain free and clear of any claim by the plaintiff the People's Bank Accounts she maintains jointly with Louise Bilyard, her United Illuminating Stock and the custodial accounts maintained for the benefit of her two daughters. The defendant shall also retain the proceeds from the state and federal tax returns (plaintiff's exhibits 7 and 8) converted during the pendency of this action.
 14. The plaintiff shall retain free and clear of any claim by the defendant his interest in J A Bake Goods.
15. Each party shall pay his or her own attorney's fees.
 16. Except to the extent more specifically set forth herein, each order of the court is to be effectuated within thirty (30) days of the date of this decision.
 17. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on their respective financial affidavits free and clear of any claim or demand by the other, and each party shall be responsible for all liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
DEWEY, J. CT Page 8482